# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 27, 2008

Charles R. Fulbruge III
Clerk

_____

No. 07-30405

_____

HEATHER LEHMAN; BILLIE J. LEHMAN, individually and on behalf of William Matthew Lehman; COLLEEN PECK, individually and on behalf of William Matthew Lehman

Plaintiffs-Appellants

v.

CHERYL M. LEICHLITER, individually and in her capacity as an officer with the Lake Charles City Police Department; CITY OF LAKE CHARLES

Defendants-Appellees

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:03-CV-1432

_____

Before DAVIS and SOUTHWICK, Circuit Judges, and CLARK, District Judge[*]

PER CURIAM:[**]

Officer Cheryl Leichliter responded to a 911 call from an apartment complex that William Matthew Lehman was being physically abusive to a

_____

[*] District Judge of the Eastern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

woman, vandalizing property, and threatening another resident. There had also been a report of shots fired. Leichliter subsequently shot and killed Matthew Lehman.[1] After declaring a mistrial on Plaintiffs-Appellants' 42 U.S.C. § 1983 and state tort claims, the district court granted Leichliter's renewed motion for judgment as a matter of law ("JMOL"). On review of all the evidence, drawing all reasonable inferences in favor of Plaintiffs-Appellants, the court holds that Plaintiffs-Appellants have shown neither that Leichliter's use of force was objectively unreasonable under federal law nor unreasonable under state law. We affirm.

## I. Facts and Procedural Background

On June 24, 2002, Heather Lehman placed a call to 911 after her brother, Matthew Lehman, became physically abusive. Before the police arrived at Heather's apartment complex, Matthew vandalized adjacent apartments and threatened another resident. Heather testified that Matthew was under the influence of alcohol and anti-depressants at the time.

Officer Cheryl Leichliter was the first officer to respond. While trying to locate the Lehman residence, Leichliter received a radio dispatch that there had been shots fired at the apartment complex. Heather's boyfriend, Benjamin Ladner, told Leichliter that Matthew was drunk and unarmed, but that she would need pepper spray to control him.

Leichliter testified at trial that Matthew ran straight at her. Both Heather and Ben testified that Matthew was ten to fifteen feet away when Leichliter first discharged her weapon. Leichliter fired three shots in all, striking Matthew twice and killing him.

Plaintiffs-Appellants (collectively "Lehman") filed suit against Leichliter pursuant to 42 U.S.C. § 1983 and Louisiana state law, alleging excessive force in violation of Matthew's constitutional rights, as well as negligence, assault,

---

[1] The district court's opinion, as well as the parties' briefs, consistently refers to William Matthew Lehman as "Matthew" rather than "William."

and battery claims. Lehman also brought suit against Leichliter's employer, the City of Lake Charles, under a theory of respondeat superior for negligent hiring, training, and supervision of Leichliter. Before trial commenced, the district court denied Leichliter's motion for summary judgment on the basis of qualified immunity. The decision was appealed to this court, and the appeal dismissed for lack of jurisdiction.

At the close of Lehman's case at trial, Leichliter and the City moved for JMOL pursuant to Federal Rule of Civil Procedure 50(a). This motion was granted with respect to the City and denied with respect to Leichliter. A second motion for JMOL was made by Leichliter at the close of all evidence, which was also denied by the court. The court declared a mistrial on September 13, 2006, after the jury was unable to reach a unanimous verdict.

Leichliter renewed her motion for JMOL on September 26. The motion was granted by the district court and all claims against Leichliter were dismissed.

## II. Standard of Review

This Court reviews a grant of JMOL de novo, Evans v. Ford Motor Co., 484 F.3d 329, 334 (5th Cir. 2007), applying the same standard as the court below and affirming if "the facts and inferences point so strongly and overwhelmingly in favor of the moving party [that] no reasonable jurors could have arrived at a contrary verdict." Conner v. Travis Cty., 209 F.3d 794, 796 (5th Cir. 2000)(internal citation omitted). In so doing, the Court must "review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party[. T]he court may not make credibility determinations or weigh the evidence, as those are jury functions." Brennans, Inc. v. Dickie Brennan & Co., Inc., 376 F.3d 356, 362 (5th Cir. 2004). "Judgment as a matter of law is appropriate with respect to an issue if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on that issue." Id.

In reviewing the record as a whole, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000); see also Evans, 484 F.3d at 334. The Court "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151, 120 S. Ct. at 2110.

## III. Analysis

A.  Timeliness of Renewed Motion for JMOL

Lehman's first argument is that Leichliter's renewed motion for JMOL was untimely because it occurred more than ten days after the entry of judgment. Federal Rule of Civil Procedure 50(b) states that a movant may renew his or her request for JMOL by filing a motion no later than ten days after the entry of judgment or, if the motion addresses a jury issue not decided by a verdict, no later than ten days after the jury is discharged. Because a mistrial was declared in this case, the latter provision applies. Federal Rule of Civil Procedure 6(a) states that when the period of time allowed is less than eleven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded from the computation. Additionally, the day of the act, event, or default from which the period begins to run is not included.

The jury in this case was discharged on September 13, 2006, which was a Wednesday. As the period permitted by Rule 50(b) is less than eleven days, intervening Saturdays and Sundays will be excluded from the calculation of the applicable period. As per Rule 6(a), the time period begins the following day, Thursday, September 14. Excluding September 16-17 and 23-24, because these are Saturdays and Sundays, the response period expired on Wednesday, September 27. Since Leichliter renewed her motion on September 26, the renewed motion for JMOL was timely.

B.    District Court's Grant of JMOL on Section 1983 Claims Based on Qualified Immunity

Lehman's second argument is that the district court erred in granting Leichliter's renewed motion for JMOL on the Section 1983 claims on the grounds that Leichliter was entitled to qualified immunity.

Evaluating qualified immunity is a two-step process. Brown v. Miller, 519 F.3d 231, 236 (5th Cir. 2008). First, the Court must determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]" Scott v. Harris, – U.S. –, 127 S. Ct. 1769, 1774 (2007). Second, if a constitutional right is found to have been violated, then the Court must determine "whether the right was clearly established – in light of the specific context of the case." Id. In order to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Brown, 519 F.3d at 236. "The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity." Michalik v. Hermann, 422 F.3d 252, 258 (5th Cir. 2005).

Under the first prong of the qualified immunity analysis, Lehman must demonstrate "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." Bush v. Strain, 513 F.3d 492, 500 (5th Cir. 2008). If Officer Leichliter was reasonable in her use of force, no constitutional violation occurred and the second prong of the analysis need not be considered. See Scott, 127 S. Ct. at 1774. Only if we find that her use of force was excessive – that is, that it violated Matthew Lehman's Fourth Amendment right to be free from an unreasonable seizure – will we consider the second prong of the qualified immunity analysis.

Deadly force by a police officer has been considered objectively reasonable under similar facts. In Reese v. Anderson, 926 F.2d 494 (5th Cir. 1991), the occupants of a car were ordered to raise their hands repeatedly and the

passenger raised and lowered his hands a number of times (allegedly indicating to the officers that he had a gun). The officer's use of deadly force on the passenger was reasonable under the circumstances, and this Court reversed the district court's denial of summary judgment based on qualified immunity. Similarly, in Mace v. City of Palestine, 333 F.3d 621 (5th Cir. 2003), this Court affirmed the district court's grant of qualified immunity for an officer who shot and killed a man who was "intoxicated, agitated, breaking windows, shouting, and brandishing an eighteen to twenty inch sword." Id. at 624. The man also "did not respond to commands to drop the sword or to stop moving toward the officers." Id. The court noted that "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." Id.

Here, Heather Lehman called 911 because Matthew Lehman, while under the influence of drugs and alcohol, had assaulted her, caused property damage, and was behaving erratically. Officer Leichliter had been informed by dispatch that shots had been fired in connection with the disturbance. At the scene, Ben Ladner told Leichliter that she would need pepper spray to subdue Matthew. In such circumstances, a reasonable officer is not required to stake her life on Ladner's statement that Matthew Lehman was not armed.

Standing more than six feet tall and weighing over 200 pounds, Matthew was substantially larger than Leichliter. Heather and Ben testified that Leichliter was between ten and fifteen feet away from Matthew when she began firing, and both agreed that Matthew was advancing toward Leichliter when she shot him. While the distance from a threat is a factor a reasonable officer must consider, qualified immunity should not depend on whether an assailant is three strides away from the officer rather than two.

There was testimony at trial from Dr. Terry Welke, an expert in forensic pathology, that one of the bullets hit Matthew in the back of his left shoulder, entering at a sharp downward angle. Welke testified that the shot was fired

from a height above Matthew's left shoulder, and that this would have been consistent with Matthew being in a crouching position. Ben Ladner testified that Matthew was close to the ground when Leichliter shot him, and that he appeared to be turning when he was shot. However, there was no evidence presented that Matthew had turned his back to Leichliter before she began firing. Heather, Ben, and Leichliter all agreed that the entire confrontation lasted only a matter of seconds.

The mere fact that Matthew may have changed his direction, changed his course, or simply changed his mind about advancing on Leichliter as she fired does not deprive the officer of qualified immunity. Welke testified that the angle of this particular bullet was consistent with Matthew being in a crouching, lunging, or attacking position. Even crediting Ben's testimony that Matthew appeared to be beginning to turn when Leichliter shot him, it was not objectively unreasonable for Leichliter, faced with a split-second decision under stressful circumstances, to fire at someone who was advancing toward her. At best, the evidence indicates that at the moment she fired, Matthew began to dodge or turn. It was his decision to do so, but it is not reasonable to expect an officer under these circumstances to foresee that this large, violent, and erratically behaving individual would turn aside, or abandon his attack. This is not a case of an officer shooting a fleeing suspect.

Although Leichliter had a baton and pepper spray, officers under immediate attack are not required by the Constitution to employ defensive tactics and weapons in some pre-determined order on a "use of force" continuum. See Graham v. Connor, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872 (1989)("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."); Illinois v. Lafayette, 462 U.S. 640, 647, 103 S. Ct. 2605, 2610 (1983)("the reasonableness of any particular government

7

activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means.'"); Mace, 333 F.3d at 625 ("Although, in retrospect, there may have been alternative courses of action for [the officer] to take, we will not use the 20-20 vision of hindsight to judge the reasonableness of [the officer's] use of force.") (internal quotation omitted).[2]  The Lake Charles Police Department authorizes the use of deadly force where "[a]n officer reasonably believes that such force is necessary to protect himself or others from a significant and immediate threat of death or serious physical injury."

To summarize, it is undisputed that Matthew Lehman, an individual substantially larger than Leichliter, was intoxicated, abusive and threatening others, engaging in property damage, behaving erratically, and was advancing on Leichliter from only ten to fifteen feet away.  Lecihliter had also been told that shots were fired at the apartment complex by dispatch.  Under these facts, the Court will affirm the district court's grant of JMOL on the basis of qualified immunity.

C.    District Court's Grant of JMOL on State Law Claims

Lehman's final argument is that the grant of JMOL on the state law battery, assault, and negligence tort claims was improper.

Battery is defined under Louisiana law as "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact ..." Johnson v. Bergeron, 07-161(La.App. 5 Cir. 8/28/07); 966 So.2d 1059, 1060 (quoting Caudle v. Betts, 512 So.2d 389, 391 (La. 1987)).  "Assault is, speaking generally, threat of a battery."  Fournette v. Tran, 2000-0805 (La.App.

---

[2] Lehman's expert on police procedure, Mel Tucker, testified at trial that Leichliter's actions were not in keeping with police training because she did not use her baton or pepper spray before discharging her gun.  However, determination of qualified immunity of an officer facing a larger opponent in the arena of sudden violence cannot be based merely upon the leisurely assessment of one ensconced in the comfortable witness chair of a protected courtroom.

4 Cir. 7/11/01);792 So.2d 870, 873. The determination of liability in a negligence case uses the so-called "duty-risk analysis."[3]

The risk in this case was obvious. A large young man, who had assaulted his sister, was threatening Leichliter with imminent physical violence. At best, Leichliter would suffer a beating; at worst, she could sustain crippling injuries or even death. The "duty" was Leichliter's duty to act reasonably and to use only as much force as was necessary under the circumstances.

Under all three state claims, battery, assault, and negligence, the analysis of the use of force is the same: "[t]he use of force when necessary to make an arrest is a legitimate police function." Kyle v. City of New Orleans, 353 So.2d 969, 972 (La. 1977). Only officers who use unreasonable or excessive force will be liable for the injuries which may result. Id. at 973. The court should evaluate the actions of the officer from the perspective of an "ordinary, prudent, and reasonable person[] placed in the same position as the officer[], with the same knowledge as that possessed by the officer[] at the time of the incident." Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94); 646 So.2d 318, 322 (citing Kyle, 353 So.2d at 973). "The scope of the officers' duty to act reasonably under the circumstances does not operate to restrict the officers to employing only the best of several available alternatives, or the least intrusive." Stroik v. Ponseti, 96-2897, p. 20 (La. 9/9/97); 699 So.2d 1072, 1079.

Louisiana courts consider seven factors in determining whether use of force is reasonable: (1) the known character of the arrestee; (2) the risks and

---

[3] This analysis has five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

Boykin v. Louisiana Transit Co., Inc., 96-1932, p.8 (La. 3/4/98); 707 So.2d 1225, 1230.

dangers faced by the officers; (3) the nature of the offense involved; (4) the chance of the arrestee's escape if the particular means are not employed; (5) the existence of alternate methods of arrest; (6) the physical size, strength, and weapons of the officers as compared to the arrestee; and (7) the exigency of the moment. Kyle, 353 So.2d at 973.

For the same reasons discussed with respect to qualified immunity in Part III(B), Leichliter is also entitled to judgment from the state law claims. Even drawing all reasonable inferences in their favor, Plaintiffs-Appellants have not presented sufficient evidence for reasonable jurors, applying the Kyle factors, to conclude that Officer Leichliter's use of force was unreasonable. The district court's grant of judgment as a matter of law is affirmed.

AFFIRMED.