# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2015

Lyle W. Cayce
Clerk

No. 14-40480
Summary Calendar

MAYLA V. CAMPOS, Individually and next friend of David Christopher Campos, an incapacitated person; DAVID CHRISTOPHER CAMPOS,

Plaintiffs - Appellants

v.

WEBB COUNTY, TEXAS,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:12-CV-7

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

David Campos ("Campos") alleges that he was sexually assaulted in the Webb County jail as a result of Defendant-Appellee's actions and policies. Plaintiffs-Appellants, Campos and his mother Mayla Campos, challenge the district court's application of the "episodic event" standard and grant of summary judgment dismissing the case with prejudice.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40480

## FACTS AND PROCEEDINGS

Campos was arrested on April 20, 2011, for possessing more than five pounds of marijuana in a drug-free zone.  After his arrest Campos went through three different screenings from various prison officials.   The initial screenings did not indicate that Campos suffered from mental illness.  Campos also denied being treated for mental illness on his intake form.  On April 21, 2011, however, a nurse noted that Campos complained of depression and mentioned attempting suicide eight years earlier.  Campos was then scheduled to meet with the prison's mental health specialist.

Four days later Campos was evaluated by a mental health specialist, Jose Macias ("Macias").   During this evaluation Campos denied being depressed or suicidal or ever having received treatment for mental health issues.  Macias noted that Campos appeared "alert, stable, coherent, and oriented."  Macias did not conduct further investigation into Campos's mental health history and concluded that he did not require further evaluation.  On April 25, 2011, Campos entered the general prison population.  Campos was placed in a medium-maximum cell despite being classified as a low-medium risk detainee.

Jose Velasquez, the alleged assailant, was admitted to the Webb County Jail on April 27, 2011.  There was no indication that Velazquez had any history of sexual assault or was a sexual threat.  Velazquez was housed with Campos. *Id.* Velazquez was discharged on July 5, 2011.

Campos's mother, Mayla Campos ("Ms. Campos"), visited Campos on July 26, 2011.  During this visit Ms. Campos became concerned, based on comments and cues, that Campos had been assaulted.  That day, Ms. Campos alerted a jailer about her concerns.  The next day, she reported her concern to Lieutenant Gutierrez and Captain Trevino.   Though the content of this conversation is in dispute, Ms. Campos contends that she told the officers that

2

No. 14-40480

her son may have been sexually assaulted or threatened and that he suffered from borderline mental retardation and bipolar disorder.

The officers then spoke with Campos. They allege that he denied both being assaulted and mentally handicapped. Campos wrote and signed a statement stating: "I David Campos was not sexually assaulted I was just pushed by Inmate Velasquez I do not want to press charges. I do not want to be moved from cell 3G." Campos alleges that he was coerced into writing this statement.

Campos was then evaluated again by Macias. It does not appear that Macias spoke with Campos about the alleged sexual assault as Macias' notes do not mention it. Macias did note that Campos was "cooperative, with clear speech," did not appear distressed, and was not a mental health risk. Campos was not evaluated for physical signs of abuse.

Campos was released on bond on August 1, 2011. Ms. Campos filed a complaint that her son had been sexually assaulted in prison on two weeks later. On January 28, 2012, Campos and Ms. Campos (as next friend of Campos, an incapacitated person) filed a suit against the Webb County Sheriff's Department and Webb County ("Webb"). The 42 U.S.C. § 1983 complaint alleged that Campos was sexually assaulted while in Webb County's custody in violation of the Eighth and Fourteenth Amendments. As to the Fourteenth Amendment, Campos alleged that Webb both failed to protect him and failed to provide him adequate medical care before and after the alleged sexual assault. Campos later voluntarily dismissed the Sheriff's Department from the case and proceeded solely against Webb.

Webb filed a motion to dismiss under Rule 12(b)(6), which the district court treated as a motion for summary judgment because of the evidence attached to the motion. The court dismissed Campos's Eighth Amendment claim on the grounds that pre-trial detainees may not bring actions under the

3

No. 14-40480

Eighth Amendment. The court then analyzed the Fourteenth Amendment claim as an episodic act or omission. Under this standard, the court held that the evidence could not support a finding that the jailers had the "requisite knowledge" for the failure to protect claim to proceed. The court also dismissed the claim for failing to provide medical care on the basis that Campos did not show any "serious harm that resulted from failing to order a physical examination or more adequate mental evaluation."

Campos raises two issues on appeal. First, he argues that the court erred in analyzing his claims under an episodic act, as opposed to a conditions of confinement, standard. Second, he argues that even under the episodic act standard, the court erred in finding that the evidence presented did not demonstrate Webb's deliberate indifference.

## DISCUSSION

### I. Standard of Review

A district court's grant of summary judgment is reviewed de novo, with all evidence construed in the light most favorable to the nonmoving party. *See Crawford v. Formosa Plastics Corp. La.*, 234 F.3d 899, 902 (5th Cir. 2000) (citations omitted). "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

### II. Did the District Court Err in Applying the Episodic Event Standard?

This court evaluates pretrial detainees' constitutional complaints of Fourteenth Amendment violations under one of two rubrics, "jail conditions"

4

or "episodic acts or omissions." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644–45 (5th Cir. 1996) (en banc). Jail conditions challenges are evaluated under *Bell v. Wolfish* to determine "[i]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). Episodic acts or omissions, however, require the plaintiff to prove that the official "acted or failed to act with subjective deliberate indifference to the detainee's needs." *Hare*, 74, F.3d 636, 647–48.

In *Hare* this court held that conditions challenges are against "general conditions, practices, rules or restrictions of pretrial confinement," whereas episodic challenges are against "a jail official's episodic act or omission." *Id.* at 643. Expressed another way, a claim against a jail condition exists when "a jailer's act or omission . . . implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice." *Id.* at 645. Absent an established rule, a claim against a jail condition exists where there is "extended or pervasive" misconduct. *Id.*

This court made this distinction, in part, because when a jail implements a condition or policy, this "manifests an avowed intent to subject a pretrial detainee to that rule or restriction." *Id.* at 644. But, "[w]ith episodic acts or omissions, intentionality is no longer a given," and this accordingly requires a higher showing of subjective deliberate indifference, demonstrating that the "official had the requisite mental state to establish his liability as a perpetrator." *Id.* at 645.

A few additional cases provide guideposts for determining if a complaint is properly construed as challenging jail conditions. *Shepherd v. Dallas County*, 591 F.3d 445, 449 (5th Cir. 2009), was "the rare case in which a plaintiff demonstrated deficiencies in the conditions of confinement that amounted to punishment." In *Shepherd* plaintiff "presented extensive

evidence on the jail's treatment of inmates with chronic illness," which included testimony from the jail's medical staff that they were chronically under-staffed and regularly failed to deliver prescriptions to over fifty-percent of the inmates. *Id.* at 450. Plaintiff's claim was also supported by reports finding that the jail's medical processes were totally inadequate. *Id.* 450–51.

As the *Shepherd* court noted "[m]ore often, however, a plaintiff's claim, properly characterized, faults specific jail officials for their acts or omissions because the plaintiff cannot establish the existence of an officially sanctioned unlawful condition." *Id.* at 452. In *Brown v. Bolin*, 500 F. App'x 309, 313 (5th Cir. 2012), for example, this court held that a claim against a physician for failing to respond appropriately to a seriously ill inmate was an episodic event, even where the plaintiff argued that the physician's training was inadequate and that there was a culture of intimidation among the physicians that stymied reporting serious medical emergencies. *Brown* specifically contrasted its facts with *Shepherd*, noting that Brown did not offer jail-wide statistics or independent studies about the conditions in the jail. *Id.* Other cases draw a similar line, rejecting a challenge-to-conditions claim where the evidence does not show a systematic policy or failure. *See, e.g., Brown v. Harris County*, 409 F. App'x 728, 731 (5th Cir. 2010) (classifying a "brutal" sexual assault as an episodic claim where the court found no evidence that sexual assaults were common in the jail and despite evidence of jail overcrowding introduced by the plaintiff); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (holding that an allegation that officers failed to screen and secure treatment for an asthmatic detainee "fits the definition of the episodic omission"); *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (rejecting a rape-victim plaintiff's argument that her claim was a condition of confinement because understaffing allowed the assault to occur, and holding that the claim was episodic because the alleged harm was the assault itself).

No. 14-40480

Comparing these cases to the record, it is clear that Campos's claim is for an episodic act or omission. Looking at the evidence in the light most favorable to Campos, he paints a picture of a mentally handicapped man whose verbal and nonverbal behavior should make his handicap obvious to observers. As a result of this obvious disability, Campos argues, Webb erred in not treating him as mentally handicapped and isolating him from certain inmates. Campos attempts to turn these acts into a jail conditions case by arguing that Webb had a policy of not segregating mentally handicapped inmates. He points to portions of the record where witnesses testified that Campos was dealt with according to policy, in order to demonstrate that Webb did not separate mentally handicapped inmates from the general population.

Still, taking the evidence in Campos' favor, it shows only that Webb made an error in failing to identify Campos' illness and segregate him from the general population. Webb clearly screens its inmates for mental illnesses for the purpose of ensuring that inmates don't harm themselves or others. The fact that Webb may have been negligent or careless in failing to identify Campos does not make this a jail conditions case. There is no evidence of a systematic failure or a policy at the jail to either not screen inmates for mental health problems or to house mentally handicapped inmates in the general population.

Thus, we hold that the complaint alleges an episodic act. The complaint and record lack the required evidence of a policy or systematic failure required to show an unconstitutional condition of confinement. The district court did not err in considering this case under the episodic acts rubric.

No. 14-40480

III.   Did the District Court Fail to Weigh the Evidence in the Light Most Favorable to Campos When It Held Campos Failed to Provide Sufficient Evidence of Subjective Deliberate Indifference?

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Negligence or even gross negligence is not enough.  *Hare*, 74. F.3d at 650. Deliberate indifference exists where a plaintiff shows that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).   For example, an official who "replaced [a] female jailer, entered [plaintiff's] cell, and sexually assaulted her repeatedly during the course of his eight-hour shift," was deliberately indifferent.  *Scott*, 114 F.3d at 52–53; *see also Tafoya v. Salazar*, 516 F.3d 912, 918–21 (10th Cir. 2008) (reversing a grant of summary judgment because plaintiff showed there was an issue of material fact regarding defendant's deliberate indifference when she alleged that defendant knew of the dangerous condition, knew that sexual assaults occurred as a result of the condition, and failed to sufficiently address the condition).

Contrastingly, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment."  *Estelle v. Gamble,* 429 U.S. 97, 107 (1976).  Similarly, "failure to alleviate a significant risk that [the official] should have perceived, but did not" is not deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1970).

The evidence presented does not demonstrate deliberate indifference in failing to protect.  For example, though—reviewing the evidence in Campos' favor—Macias should have known that Campos was mentally handicapped, there is no evidence that Macias suspected that his diagnosis was incorrect or

8

that he knew Campos would be harmed if he was not classified as mentally handicapped. Though Macias could have searched for Campos' health records or conducted further tests, it was not indifferent to rely on his medical judgment and Campos' own assertion that he was not mentally retarded. Similarly, though David Martinez, the classification officer, may have erred in housing Campos in a medium-high cell instead of a low-medium cell, there is no evidence that this mistake was made intentionally or with a wanton disregard for Campos' well-being. Indeed, the evidence suggests that Martinez intended to place Campos in a low-medium cell for Campos' benefit but made a mistake. Further, Campos has not provided evidence that the training or supervision provided by the jail was somehow defective.

The evidence offered to show a failure to provide medical care also does not rise to the level of deliberate indifference. A detainee's right to medical care is "violated if an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries." *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003). "[T]he correct legal standard is not whether the jail officers knew or should have known, but whether they had gained actual knowledge of the substantial risk . . . and responded with deliberate indifference." *Hare*, 74 F.3d at 650 (internal quotations omitted). Here, as with the failure to protect analysis, we do not find that Campos has presented sufficient evidence to conclude that Webb was deliberately indifferent to his medical needs before or after the alleged assault.

Campos alleges that Webb knew he had been sexually assaulted once his mother reported it and yet did not provide him with appropriate medical care. In support of this he claims that the jail forced him to write a false statement that he had not been assaulted. Despite being screened by Macias for mental health issues after writing this statement, Campos argues that he was not given a physical evaluation and not identified as a victim of sexual assault.

These actions, while clearly less than model, do not amount to deliberate indifference. First, Campos received a mental health review from Macias after the alleged assault. While Macias' notes do not mention the sexual assault, which is concerning, the fact that Campos was provided an opportunity to meet with Macias cuts against the idea that the prison was deliberately indifferent to his medical needs. Second, though the allegation of rape alone suggests the need for physical evaluation, there is no indication that the jailers believed that Campos was suffering from any sort of physical injuries that required attention. Indeed, Ms. Campos' report alleged that there was either an assault or a threat, thus, the jailers may have concluded that there were no physical injuries. Lastly, as the district court noted, there is no evidence that not receiving care during the four days between Ms. Campos' report and Campos' release on bond worsened his condition. This does not mean that there could not have been deliberate indifference, but it does support the argument that the jailers were not deliberately indifferent to a serious medical need during those four days.

The evidence Campos presents to show that after the sexual assault Webb failed to provide him proper medical care is not without substance. Webb's apparent failure to inform Macias about the alleged sexual assault before Campos' mental health evaluation, in particular, is troubling. It does not, however, rise to the level of deliberate indifference. By comparison, Webb's actions are neither of a piece with those in *Scott*, 114 F.3d at 53, nor clouded by a clear knowledge of an institutional danger as in *Tafoya*. 516 F.3d at 921. Webb's actions do not demonstrate that Campos was "intentionally treated . . . incorrectly" or with "wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238. Consequently, we hold that the district court did not err in granting summary judgment on the grounds that Campos failed to demonstrate Webb's deliberate indifference to his medical needs.

10

No. 14-40480

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.