IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2008

Charles R. Fulbruge III
Clerk

No. 07-50785

ALFREDO RAMIREZ, JR

Plaintiff-Appellee

v.

JOHN KNOULTON

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before SMITH and PRADO, Circuit Judges, and LUDLUM[*], District Judge.

PRADO, Circuit Judge:

Defendant-Appellant Kerrville Police Officer John Knoulton ("Knoulton") appeals the district court's denial of summary judgment based on qualified immunity in this excessive force suit brought by Plaintiff-Appellee Alfredo Ramirez, Jr. ("Ramirez"). Because there is no genuine issue of material fact—and because Ramirez failed to allege facts supporting a constitutional violation—we reverse the district court's denial of summary judgment and render judgment in favor of Knoulton.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[*] District Judge of the Western District of Texas, sitting by designation.

In early 2005, Ramirez, then age twenty-one, was under investigation for indecency with a child by contact, viz., sexual contact with a thirteen-year-old girl.[1] On the morning of January 18, 2005, Ramirez spoke on the phone with Kerrville Police Detective Steve Sudyka ("Sudyka"), who was investigating the sexual contact charge. A distraught Ramirez told Sudyka that he would not go back to jail, that he had a .22 caliber handgun, and that he would "take care of the problem." Sudyka interpreted this to mean that Ramirez intended to commit suicide, so Sudyka dispatched two patrol cars to Ramirez's home. The uniformed officers who responded were told that Ramirez was suicidal and armed.

The officers, including Knoulton, arrived to find Ramirez walking from his home to his car. Ramirez drove away and the officers followed, with Knoulton driving immediately behind Ramirez. Knoulton's supervisor instructed him to pull Ramirez over. Knoulton activated his patrol car's flashing overhead lights and turned on his vehicle's video camera. Ramirez did not immediately stop. He continued driving under the speed limit, paused at two stop signs, and made two turns before finally stopping on the side of a road. The road where Ramirez stopped did not have houses immediately lining the street, nor was there much traffic; only one civilian car appeared during the incident.

The officers crouched behind their patrol cars with weapons drawn. Knoulton and at least one other officer called to Ramirez, telling him to keep his hands where they could be seen and to reach out through the open window and open the car door. The officers repeated these commands, but Ramirez did not comply. Instead, after sitting in the car for over a minute, Ramirez opened the door from the inside and set his feet on the ground. At this point, the officers saw that Ramirez held something in his right hand, and they yelled more urgently for Ramirez to raise his hands. They also asked what was in his hand.

---

[1] Charges were filed in that matter and later dropped.

Ramirez then rose from the car seat and officers ordered him to drop what was in his hand and raise his hands. Ramirez did not comply but swung the car door closed with his right hand, clearly showing that he held a handgun in that hand. Thereafter, Ramirez stood in profile to the officers, with his arms at his sides and the handgun in his right hand, the side of his body opposite from the officers. Ramirez briefly put his hands on his hips, then brought his hands together in front of his waist. As Ramirez's hands came together, Knoulton fired a single round from his AR-15 rifle, hitting Ramirez in the face. Ramirez fell to the ground, landing with his head partially under his car. The radio transmission of "shots fired, man down" went out immediately.

The officers approached cautiously with their weapons trained on Ramirez. He flailed on the ground, and the officers eventually were able to move close enough to move the handgun away and apprehend Ramirez. He was transported to a hospital via helicopter and survived his injuries.

In April 2006, Ramirez filed suit against Knoulton and the City of Kerrville under 42 U.S.C. § 1983, alleging a violation of his Fourth Amendment right to be free from excessive force. The parties consented to proceed before a magistrate judge. On June 15, 2007, the magistrate judge denied Knoulton's summary judgment motion on the basis that a genuine issue of material fact existed on Knoulton's claim of qualified immunity.[2] Knoulton filed this interlocutory appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine 'to the extent that it turns on an issue of law.'" Flores v. City of Palacios, 381 F.3d 391, 393 (5th Cir. 2004) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)).

---

[2] The court granted summary judgment with respect to Ramirez's claims against the City of Kerrville.

"Where the district court has denied summary judgment on the ground that material issues of fact exist as to the plaintiff's claims, this court lacks jurisdiction to review the court's determination that a genuine fact issue exists." Freeman v. Gore, 483 F.3d 404, 410 (5th Cir. 2007).

The magistrate judge in this case stated that a genuine issue of material fact exists regarding whether a constitutional violation occurred in this case. However, the parties do not dispute any of the facts underlying Ramirez's claims, which are memorialized by video.[3] The only dispute in this case, as the magistrate judge notes, is whether Knoulton acted reasonably in these circumstances. See Graham v. Connor, 490 U.S. 386, 388 (1989) (holding that Fourth Amendment excessive force claims are properly analyzed under an objective reasonableness standard). "[T]he ultimate determination of Fourth Amendment objective reasonableness is a question of law." White v. Balderama, 153 F.3d 237, 241 (5th Cir. 1998). Therefore, the only issue is a legal question, and we have jurisdiction to review the district court's denial of summary judgment. "This court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity." Freeman, 483 F.3d at 410.

## III. DISCUSSION

"This court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." Id. If we find such a violation, "we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." Id. at 411.

---

[3] Three videos of this incident, showing the car chase and the shooting, are in this court's record and confirm the facts as stated here.

Substantively, Ramirez alleges that Knoulton used excessive force in violation of the Fourth Amendment right against unreasonable seizure. See Colston v. Barnhart, 130 F.3d 96, 102 (5th Cir. 1997) ("The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens."). "To prevail on an excessive force claim, a plaintiff must establish: '(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" Freeman, 483 F.3d at 416 (quoting Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005)).

There is no dispute that Ramirez suffered an injury. The relevant question in this case is whether the force was "clearly excessive" or "clearly unreasonable." In deciding this question, we must determine whether "the totality of the circumstances justified" the particular use of force. Tennessee v. Garner, 471 U.S. 1, 9 (1985). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. This is an objective standard: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. This test "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. The test for reasonableness also must consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

"Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others."

Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003). "To gauge the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force," paying "careful attention to the facts and circumstances of each particular case." Flores, 381 F.3d at 399 (internal quotation marks and citations omitted).

The magistrate judge concluded that Knoulton's use of force might have been excessive and objectively unreasonable because Ramirez did not raise his weapon, discharge the weapon, or even point it at the officers. The court also noted that Ramirez's car was stopped by the side of the road with no other vehicles, pedestrians, or homes nearby, and therefore, Ramirez was not a threat to others. In addition, the magistrate judge observed that Knoulton summoned a crisis negotiator to the scene, yet shot Ramirez before the negotiator could speak with Ramirez to convince him to surrender peacefully. The magistrate judge further noted that there is no indication that the officers first considered using non-lethal force. Finally, the magistrate judge considered the timing of the episode to be persuasive, pointing out that Ramirez was shot less than two minutes after the stop and about ten seconds after stepping out of the vehicle. Based on these reasons, the magistrate judge concluded that there was at least a factual issue with respect to whether Knoulton's actions were excessive.

It appears to us that the magistrate judge has largely employed 20/20 hindsight in reaching this conclusion. First, the magistrate judge found that Ramirez made no threatening gestures toward the officers. The magistrate judge cited Ballard v. Barton, 444 F.3d 391 (5th Cir. 2006), and Mace, 333 F.3d 621, for examples of facts justifying the use of deadly force against an emotionally unstable individual brandishing a weapon. In Ballard, the individual fired a rifle into the air and aimed it in the general direction of multiple police officers. 444 F.3d at 395. In Mace, the individual waved a sword at police officers and raised it in a threatening manner. 333 F.3d at 622-23. The

magistrate judge reasoned that, unlike in Ballard and Mace, Ramirez never raised his weapon nor aimed it at the officers.

This position, however, fails to consider the reasonable belief of an officer at the scene. The issue before us is whether, in considering the totality of the circumstances, Knoulton had "probable cause to believe that the suspect pose[d] a threat of serious physical harm." Garner, 471 U.S. at 11. We conclude that he did.

Second, the magistrate judge improperly criticized Knoulton's failure to consider the use of non-lethal force or to employ a crisis negotiator. "A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished." United States v. Sharpe, 470 U.S. 675, 686-87 (1985). "The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." Id. at 687. Even where an officer acts negligently and contrary to police procedure, this court has failed to recognize a constitutional claim where a police officer used deadly force in response to a reasonable belief that an individual posed a threat of serious harm. See Young v. City of Killeen, 775 F.2d 1349, 1350-53 (5th Cir. 1985).[4] The Fourth Circuit has stated this well:

> The Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists. The court's comment that the officers could have moved away from the car is, unfortunately, a suggestion more reflective of the 'peace of a judge's chambers' than of a dangerous and threatening situation on the street.

---

[4] In Young, a police officer observed Young engaged in a drug transaction, and the officer blocked Young's path as he attempted to flee by car. 775 F.2d at 1351. When the officer approached the car on foot, Young reached under the seat of his car. Id. The officer, believing Young was reaching for a weapon, shot and killed Young. Id. The court held that "[i]f Young's movements gave [the officer] cause to believe that there was a threat of serious physical harm, [the officer's] use of deadly force was not a constitutional violation." Id. at 1353.

Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996).

Finally, the magistrate judge's focus on the timing of the incident ignores that police officers often must make decisions in situations that are "tense, uncertain, and rapidly evolving." Graham, 490 U.S. at 397. Where, as here, the officer reasonably believed Ramirez posed a threat, courts should not second guess the timing of that realization. We believe the magistrate judge's perspective of the timing of this incident fails to take into account the reasonable beliefs of officers standing yards away from a defiant, disturbed, and armed man.

A closely analogous case is Reese v. Anderson, 926 F.2d 494 (5th Cir. 1991), in which an unarmed robbery suspect was shot and killed by a police officer. After a high-speed chase, police officers stopped the victim, Crawford, and his accomplices in their getaway car. Officer Anderson ordered the car's occupants to raise their hands. Crawford remained in the car and repeatedly raised and lowered his hands. The third time Crawford lowered his hands, he turned slightly away from the officer and reached lower toward the floorboard. When he started to sit back up, Anderson shot him once in the head at a range of ten feet. It was later discovered that Crawford was actually unarmed.

The district court denied the officer's summary judgment motion, but the Fifth Circuit reversed. The panel concluded that it was reasonable for the officer to fear for his safety in this situation. The court considered it significant that the victim repeatedly ignored the officer's warnings: "Anderson had repeatedly warned Crawford to raise his hands and was now faced with a situation in which another warning could (it appeared at the time) cost the life of Anderson or another officer. Under such circumstances, an officer is justified in using deadly force to defend himself and others around him." Id. at 501.

The totality of Ramirez's conduct could reasonably be interpreted as defiant and threatening. He repeatedly refused the officers' commands and

8

ultimately stood, armed, several yards from the officers. Ramirez brought his hands together in what we believe could reasonably be interpreted as a threatening gesture, as if to grip the handgun with both hands in preparation to aim it at the officers.[5]  Finally, the officers were already on notice that Ramirez was armed, emotionally unstable, and potentially suicidal. Knoulton reasonably feared for his life and the lives of his fellow officers. Knoulton's decision to use deadly force was therefore not objectively unreasonable, and no Fourth Amendment violation occurred.[6]

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's denial of summary judgment and RENDER judgment in favor of Knoulton.

REVERSED and RENDERED.

---

[5] Ramirez asserts that by bringing his hands together, he was merely attempting to comply with the officers' order that he drop the gun.  However, Ramirez's subjective intent is irrelevant where the only issue is what a reasonable officer would have believed under these circumstances.

[6] Concluding that no constitutional violation occurred in this case, we need not address the issue of qualified immunity.