**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 8, 2012

No. 11-60318

Lyle W. Cayce
Clerk

ZETA MCBROOM,

Plaintiff-Appellant

v.

SHERIFF GEORGE PAYNE, JR., officially; OFFICER JOHN MASSENGILL,
officially and in his individual capacity,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:06-CV-1222

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Zeta McBroom brought excessive-force claims under
42 U.S.C. § 1983 against officers of the Harrison County Sheriff's Department
arising from her shooting and paralysis by Defendant-Appellee Officer John
Massengill. McBroom appeals a jury verdict in favor of Massengill and a
summary judgment in favor of Defendant-Appellee Sheriff George Payne, Jr.,
whom McBroom sued in his official capacity as Harrison County's policymaker

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-60318

under *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978). McBroom contends that the district court erred in denying her motion for a new trial on the grounds that the jury's verdict was against the overwhelming weight of the evidence and that the district court erred in a number of evidentiary rulings. We find no abuse of discretion in the district court's evidentiary rulings and refusal to grant a new trial, and the jury verdict leaves no underlying constitutional deprivation to support the *Monell* claim.

We AFFIRM.

## I. Background

In January 2006, McBroom was driving her Ford Bronco near her home. She was intoxicated, and Massengill saw her run off the road several times. He drew behind her in his patrol car and signaled her to pull over, but she fled. After an earlier drunk driving incident in October 2005, McBroom had been taken to Harrison County Detention Center ("HCDC"), where she alleges she was beaten by several Sheriff's Department officers who told her they would kill her if she was ever seen at HCDC again.[1] Massengill pursued McBroom, who ran two stop signs before turning onto a highway. On the highway, she twice swerved into the oncoming lane, nearly hitting another car each time. Officer Justin Branning joined the chase after McBroom ran a red light at a highway intersection.

McBroom led the officers onto smaller roads before she turned onto Saucier Lane, a one-lane road bounded by shallow ditches and woods. The events that followed were the subject of confused and conflicting testimony from McBroom, Massengill, Branning, and a number of bystanders. The material facts, however, are largely established by expert reconstruction based on physical evidence, though the precise sequence of events and the exact physical

---

[1] Massengill was not among the officers who assaulted McBroom at HCDC.

No. 11-60318

distances involved  remain unclear.  We relate the account that can be reasonably inferred from all of the trial evidence, considered in the light most favorable to the jury's verdict.

McBroom sideswiped a debris pile as she turned onto Saucier Lane, drove about 200 feet down the lane, and then brought the Bronco to a stop.  Massengill then turned the corner, drove some distance toward the stationary Bronco and stopped his car about forty feet behind it.  Officer Branning then arrived, parking his car at the turn onto the lane.  McBroom then put the Bronco in reverse and accelerated toward Massengill's patrol car.  Branning got out of his vehicle and began running toward Massengill's car.  Massengill observed that Branning's car blocked the lane behind him.  The patrol car's emergency brake was on when the Bronco collided with the front of the patrol car.  The Bronco crushed the push-bar attached to the car's frame, and began pushing the car backward.  Massengill fired his pistol through his patrol car's front windshield at the rear driver's side of the Bronco, discharging eleven rounds in about three seconds.  After pushing the patrol car about nine feet, the Bronco began moving forward again.  It separated from the patrol car, traveled about eighty feet down the lane, and then veered into the woods, coming to a stop about twenty feet from the lane.  Two of Massengill's shots ricocheted off of the inside of his bulletproof windshield.  The remaining bullets created a cluster of holes in the windshield. Eight bullets entered the rear driver's side of the Bronco.  One of those bullets struck McBroom in the spine, instantly paralyzing her from the neck down.   McBroom was immobile, slumped to her left side, as the Bronco traveled forward and veered into the trees.

McBroom brought various state-law and federal civil-rights claims against Harrison County, Branning, Massengill, and Payne.  Only the excessive-force claim against Massengill went to  trial.  The jury found for Massengill, and McBroom moved for a new trial under FED. R. CIV. P. 59.  The district court

3

denied the motion, and entered judgments reflecting the jury verdict and the grant of summary judgment for Payne. McBroom then brought this appeal.

## II. Discussion

### A. Sufficiency of the Evidence

We first address McBroom's contention that the district court should have granted a new trial on the ground that the verdict for Massengill was inadequately supported by the evidence. "A trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (internal quotation marks and citation omitted). That determination "is within the sound discretion of the trial court, and we will not reverse its ruling without a clear showing that this discretion has been abused." *Id.* We must therefore affirm the judgment unless the evidence, viewed in the light most favorable to the verdict, so strongly favors the movant that reasonable people could not have found as the jury did. *Id.*

To prevail on her excessive force claim, McBroom had to establish that her injuries "resulted directly and only from a use of force that was clearly excessive . . . and clearly unreasonable." *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (internal quotation marks and citation omitted). The only dispute in this case is whether Massengill acted reasonably in firing at the Bronco. It is reasonable to use deadly force to address "a credible, serious threat to the physical safety of the officer or to those in the vicinity." *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). The reasonableness of an officer's force is evaluated "in light of the facts and circumstances confronting [him]." *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989) (internal quotation marks and citation omitted). In this case, the threat to Massengill continued at least until the point when the Bronco began moving forward off the front of his patrol car. *See Hathaway*, 507 F.3d at 321-22.

No. 11-60318

McBroom alleges that Massengill fired the shot that paralyzed her after the Bronco started moving forward, away from his car. She makes much of various inconsistences between the testimony of Branning, Massengill, and a number of bystanders concerning when Massengill began firing and several other details of the shooting. Though she does not remember how the Bronco was shifted to drive and accelerated after the impact with the patrol car, she argues that she must have done those things before she was shot and paralyzed. We agree that McBroom could not have deliberately manipulated the Bronco's controls after she was paralyzed, but a reasonable jury could nevertheless have found for Massengill. Uncertainty about when Massengill fired is largely dispelled by the testimony of his expert shooting analyst, Alexander Jason. The holes in the patrol car's windshield and the holes in the back of the Bronco enabled Jason to reconstruct the bullets' flight paths and determine the relative position of the vehicles when they were fired. The rounds that struck the Bronco were fired while the Bronco was in contact with the patrol car, some while the Bronco's rear portion was directly on top of the car's hood. As to how the Bronco was shifted in to drive, the jury could have inferred that the shift lever may have been pushed by McBroom's torso or one of her arms as she slumped over, or she may have shifted just before the bullet struck her. The Bronco would have accelerated forward if her right leg was positioned such that its weight brought her foot down against the gas pedal after she was paralyzed. The district court did not abuse its discretion in finding that sufficient evidence supported the verdict.

## B. The District Court's Evidentiary Rulings

We next consider McBroom's contention that the district court should have granted a new trial because of erroneous evidentiary rulings. We review evidentiary rulings for abuse of discretion, and we will reverse only if the district

court's decision affects a substantial right of a party. *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1574 (5th Cir. 1996).

McBroom sought to present evidence of the October, 2005 beating at the HCDC, and to relate that experience on the stand in order to explain why she fled from Massengill. The district court did not abuse its discretion in refusing to allow her to do so. McBroom's reasons for fleeing are not relevant to the reasonableness of Massengill's decision to fire at the Bronco.

McBroom argues that the district court erred in not permitting her police procedures expert, Dennis Waller, to testify that Massengill used excessive force. "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED.R.EVID. 704(a). But that does not permit experts to offer legal conclusions, *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999), and whether an officer's use of his firearm was unreasonable for purposes of the Fourth Amendment is a legal conclusion. *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003). There was no abuse of discretion on this point.

McBroom contends that the district court abused its discretion in refusing to allow her counsel to have Massengill's police procedures expert, Mark Dunston, read aloud three passages from *Total Survival*, a book he co-authored about police procedures. *Total Survival* was established as a learned treatise on police procedures under FED. R. EVID. 803.18(B) when Dunston testified on cross-examination that it is authoritative on that topic. McBroom's counsel wished to have Dunston read aloud three passages from *Total Survival*. We find no abuse of discretion in the district court's refusal to allow any of them.

The first passage explains that "[f]ew endeavors offer more temptations to be dishonest than law enforcement." The district court did not abuse its discretion in refusing to allow this passage. The jury was aware that Massengill's and Branning's testimony was self-interested, and the fact that

police often face circumstances in which they might benefit by lying is irrelevant to whether they actually did lie in this case.

The second passage explains that the stressful circumstances of a chase often impair police officers' judgment. The third explains that the stress of a chase or confrontation triggers a neurochemical response in officers' brains that distorts their experience and later recollection of events such that "details of the actual threat are greatly enhanced, . . . other visual stimuli are excluded and perceptual errors result." The district court viewed these passages as invading the jury's role of determining the credibility of the witnesses. We do not share that view.[2] But the second passage in any event is cumulative. Massengill agreed on cross-examination that "pursuits can cloud officers' judgments," and McBroom's counsel was permitted to read aloud language to the same effect from the Sheriff's Department's own written policies. Regarding the third passage, *Total Survival* was not established as authoritative on the neurochemical effects of acute stress on human perception and memory. Moreover, the other evidence amply demonstrated that Massengill's and Branning's memories of several details of the shooting were contradictory and ill-formed. Branning even admitted that his stress during the shooting had affected his ability to recall what exactly had happened.

## C. McBroom's *Monell* Claim

We do not reach the merits of the district court's summary judgment disposing of McBroom's official-capacity suit against Payne, because the jury's verdict for Massengill leaves no underlying constitutional violation on which to base municipal liability. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578

---

[2] The second passage concerned officers' judgment during a chase; it said nothing about credibility. Regarding the third, we have held that admitting expert testimony concerning the reliability of testimony from memory can be helpful to the jury in evaluating credibility if it counteracts "common myths about an individual's capacity for perception," like the "belie[f] that witnesses remember better when they are under stress." *United States v. Moore*, 786 F.2d 1308, 1312 (5th Cir. 1986) (internal citation omitted).

No. 11-60318

(5th Cir. 2001) ("[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." (internal quotation marks and citation omitted)).

### III. Conclusion

The district court's judgment is AFFIRMED.