# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2014

Lyle W. Cayce
Clerk

No. 13-11143
Summary Calendar

NANCY ROYAL, Individually and Personal Representative of the Estate of Jeffery Cole Royal, Deceased,

> Plaintiff–Appellant,

v.

JOHN SPRAGINS; MICHAEL BROWN; MICHAEL GOINS; CITY OF WICHITA FALLS, TEXAS; MANUEL BORREGO,

> Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:12-CV-174

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Nancy Royal (Royal) sued three Wichita Falls police officers, the City of Wichita Falls, and the Chief of Police Manuel Borrego under 42 U.S.C. § 1983, claiming that the defendants violated her son's constitutional rights. The claims arise out of a tragic incident, in which the officers shot and killed her son Jeffery Cole Royal (Jeffery) after responding to a 911 call that he was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-11143

threatening to commit suicide. All of the defendants moved for summary judgment, and the district court granted their motions. We affirm.

## I

We begin with a brief overview of the summary judgment evidence. Each of the affidavits of the three police officers tell essentially the same story: One evening, the three officers were dispatched to an address, on Becky Drive, in a mobile home park. The officers were aware that the man outside the home was suicidal and had a gun. Two of the officers, Michael Brown and Michael Goins, arrived at the trailer park first and parked their patrol cars at the entrance to the trailer park. They decided to take their rifles and attempt to locate the subject on foot. As they began walking down Eldridge Lane toward Becky Drive, the third officer, Sergeant John Spragins, drove up in his patrol car behind them. Spragins briefly spoke with Brown and Goins, then turned onto Becky Drive and continued driving slowly down the street. Brown and Goins followed behind Spragins on foot using his patrol car as cover. Spragins confirmed with Dispatch that the subject was in a gold Chevrolet Impala vehicle, and the officers soon saw a car matching the vehicle's description. Spragins saw the subject (Jeffery) inside the vehicle and another person (Thomas Orr) standing outside of the car by the driver's side door. Spragins stopped his patrol car where Becky Drive begins to curve around to the east, so that the car was facing to the south, approximately fifteen to twenty yards from Jeffery's car, which faced west. Spragins turned his spotlight on the subject's vehicle and yelled for Orr to move away from the car. As Orr started to walk to the rear of the car and then north behind the car towards the trailer home on Becky Drive, Jeffery open the car door and started to get out, holding a rifle in his hand. At least one officer told Jeffery to drop the rifle, but Jeffery instead lowered the rifle and pointed it in the direction of the officers. The

2

officers then fired their guns at Jeffery until he fell backwards from being struck.

A declaration by Orr was also part of the record. In his declaration, Orr stated that: (1) he was within five feet of Jeffery when he was shot; (2) "[p]rior to the shooting, at no time did [he] see [Jeffery] point his rifle at anyone" or "hear anyone state to . . . [Jeffery] . . . to put down his rifle"; and (3) he "saw Jeffery falling to the ground after he was shot and the position of his rifle was the same as Jeffery held it prior to being shot, and was not pointed at anyone."

The evidence also included an autopsy report prepared by Dr. Marc A. Krouse. The report stated that the path of one of the bullets "through the left forearm and its fragments into the chest wall is consistent with the forearm extended to near horizontal and to the left of and slightly forward of the chest. Such a position is consistent with statements from the police officers at the scene that . . . Jeffery . . . had a firearm . . . pointed in the general direction of the subject who fired the projectile that struck [his] left arm."

Other evidence included affidavits of Detectives Tony Fox and John Laughlin, who arrived at the scene after the shooting occurred; a Tarrant County Medical Examiner's Report, largely summarizing statements by Detective Laughlin; an Open Records Request Letter from the City of Wichita Falls with a Custodial Death Report and notes from Detective Laughlin; depositions of the officers; and a photograph of the scene after the shooting.

## II

Royal sued the three police officers in their individual capacities under § 1983 claiming that the officers used excessive force in violation of the Fourth Amendment right against unreasonable seizure. She also sued the Chief of Police in his official capacity and the City of Wichita Falls under various theories of municipal liability under § 1983. In their answer, the police officers

No. 13-11143

asserted qualified immunity.  The district court initially denied the defense, but it permitted the officers to raise the defense again by a later motion.  The officers subsequently moved for summary judgment, alleging qualified immunity, and Royal filed a response.

The district court granted the motion for summary judgment, holding that there was no genuine dispute as to any material fact and the officers were entitled to immunity because the force used was not excessive or unreasonable. Royal filed a motion for reconsideration.  In a response, the officers urged the court to deny reconsideration, and the City of Wichita Falls and the Police Chief argued that since there was no underlying constitutional violation, summary judgment in their favor was appropriate as well.  The district court denied the motion for reconsideration and also granted summary judgment for the City and the Police Chief.  Royal appealed.

### III

We review the grant of a motion for summary judgment de novo, applying the same standard as the district court.[1]  Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  We must view the evidence in the light most favorable to the non-moving party,[3] but "conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."[4]

---

[1] *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir. 2010).

[2] FED. R. CIV. P. 56(a).

[3] *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

[4] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

4

No. 13-11143

## IV

We begin by addressing whether the three police officers were entitled to qualified immunity from the claim of excessive force.  We apply a two-step analysis to decide whether a defendant is entitled to summary judgment on the basis of qualified immunity.  "First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights."[5]  If we determine there was such a violation, "we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question."[6]

Here, Royal alleges that the officers used excessive force in violation of the Fourth Amendment right against unreasonable seizure.  "To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[7]  In deciding whether the force used was "clearly excessive" and "clearly unreasonable," "we must determine whether 'the totality of the circumstances justified' the particular use of force."[8]  This is an objective standard, and "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[9]  Determining "whether this right was violated requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment

---

[5] *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)).

[6] *Id.* (quoting *Freeman*, 483 F.3d at 411).

[7] *Id.* (quoting *Freeman*, 483 F.3d at 416) (internal quotation marks omitted).

[8] *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)).

[9] *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

interests against the importance of the governmental interests alleged to justify the intrusion."[10]  Using "deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others."[11]

The district court concluded that the officers were entitled to qualified immunity since their use of force was not excessive or unreasonable under the circumstances.  According to the district court, the officers presented evidence that Jeffery pointed his gun at them, and Royal did not come forth with any non-conclusory, relevant conflicting evidence in order to raise a genuine issue of material of fact.  The district court thus held that the officers' use of deadly force was reasonable in response to the threat of serious physical harm posed by a suicidal man pointing his gun at them.

We agree that the force used was not clearly excessive or clearly unreasonable.  In a case similar to this one, *Ramirez v. Knoulton*,[12] two officers responded to a call about a man who was suicidal and armed.[13]  The suicidal man drove away from his house as the officers arrived, and the officers followed him in their patrol car until he stopped.[14]  The officers repeatedly told the man to keep his hands where the officers could see them, but he refused.[15]  Instead, he got out of the car, and the officers saw a gun in his right hand.[16]  The man "briefly put his hands on his hips, then brought his hands together in front of

---

[10] *See Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (quoting *Garner*, 471 U.S. at 8) (internal quotation marks omitted).

[11] *Ramirez*, 542 F.3d at 129 (quoting *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003)).

[12] 542 F.3d 124 (5th Cir. 2008).

[13] *Ramirez*, 542 F.3d at 126-27.

[14] *Id.* at 127.

[15] *Id.*

[16] *Id.*

his waist," and as his hands came together, one officer fired a shot and hit the man in the face.[17] Reversing the district court's denial of summary judgment to the shooting officer, the Fifth Circuit held that the officer's actions did not constitute excessive force.[18] This court reasoned that even though the man did not raise his weapon, discharge the weapon, or even point it at the officer, the officer had probable cause to believe that the man posed a threat of serious physical harm.[19]

Here, the analysis is even clearer: Jeffery, a suicidal man, not only exited his car with his gun, but also began lowering the gun and pointing it at the officers. This was sufficient to give the officers full reason to believe that Jeffery posed a threat of serious harm to them. Under these circumstances, the use of deadly force was not clearly excessive or clearly unreasonable.

Royal nonetheless argues summary judgment was inappropriate because there was a genuine dispute of material fact as to whether Jeffery began lowering his gun and pointing it at the officers immediately prior to the shooting. This argument fails. All three of the officers on the scene stated in their affidavits that Jeffery began lowering his gun and pointing it in their direction after exiting his vehicle. Orr's declaration only states that *he never saw* Jeffery point his gun at anyone, not that Jeffery never actually pointed the gun at anyone. From Spragins's affidavit, it is clear that after the officers asked Orr to step away from the vehicle, which was right before Jeffery was shot, Orr began walking towards the back of the car and across the back of the car in the direction of his home. Even Royal admits in her briefing that although Orr observed Jeffery "just before being shot," "Orr was not directly

---

[17] *Id.*

[18] *Id.* at 131.

[19] *Id.* at 129.

looking at [Jeffery] when [he was] shot." Thus, the only testimony in the record as to whether Jeffery began lowering his gun in the officers' direction immediately prior to when the officers fired is the officers' testimony that he did so.

Royal also contends that other evidence created a genuine dispute of material fact. First, she claims that Jeffery's forearm could not have been extended and parallel to the ground at the time he was shot because of the way one of the bullets impacted his forearm. However, the only evidence Royal cites, Dr. Krouse's autopsy report, described the forearm wound in detail and stated that the wound was consistent with Jeffery's gun being pointed in the general direction of the officer who shot his forearm. Moreover, the report's statement that the bullets were in a "downward" direction "relative to his body core" was regarding the bullets that struck Jeffery's shoulder and chest, not the bullet that struck his forearm. Without citing any evidence that contradicts the autopsy report's findings, Royal's allegations regarding the forearm wound are unsubstantiated assertions that cannot defeat a motion for summary judgment.

Second, Royal contends that the officers' and Orr's accounts are inconsistent about other events immediately preceding the shooting, such as whether Jeffery was ordered out of the car and told to drop his gun, and whether Jeffery knew that the officers were not ordinary citizens. Yet issues like these are not "material" because they do not alter our excessive force analysis: whether *the officer* was objectively reasonable in believing the subject posed a threat of serious harm.[20] Even if there are a few minor inconsistencies

---

[20] *Id.* at 129; *see also Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994) (stating that "[a]n issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law").

in the accounts, no evidence contradicts the affidavits' statements that Jeffery was in the process of pointing his gun towards the officers before they fired.

Royal further argues that the officers' actions leading up to the shooting created a dangerous situation, and in assessing the reasonableness of the officers' force, we should consider whether the officers' own reckless conduct unreasonably created the need to use such force. Specifically, Royal argues that the officers created a dangerous situation in several ways: by (1) not knowing policies or procedures applicable to dealing with a suicidal person; (2) not using their patrol cars' audio or video recording; (3) not using the patrol cars' headlights or any other lights prior to shining the spotlight; and (4) concealing the fact that they were police officers. This line of argument also lacks merit.

We have stated that "[e]ven where an officer acts negligently and contrary to police procedure, this court has failed to recognize a constitutional claim where a police officer used deadly force in response to a reasonable belief that an individual posed a threat of serious harm."[21] We decline Royal's invitation to stray from our precedents by considering the officers' actions before the moment of the threat that resulted in the officers' shooting—here, the moment when Jeffery began lowering the rifle. Even assuming that Wichita Falls had a policy in place for dealing with suicidal persons and the officers were not aware of or did not follow the policy, the officers did not violate Jeffery's Fourth Amendment right to be free from excessive force as they acted reasonably when Jeffery began lowering his gun.

Finally, Royal contends that because an emergency situation arose which led to Jeffery's seizure, the officers "had the burden of proving they ha[d] an objectively reasonable concern that exigent circumstances exist[ed]." Yet

---

[21] *Ramirez*, 542 F.3d at 130.

No. 13-11143

the one case Royal cites for this proposition is a Tenth Circuit case analyzing whether police officers reasonably relied on a search warrant authorizing a no-knock entry of a residence on the basis of exigent circumstances.[22]  Although this case also involves a Fourth Amendment claim, Royal cites nothing to suggest our court would apply this exigent-circumstances rule in considering whether force used by officers was clearly excessive or clearly unreasonable. We instead apply our binding precedents and hold that the officers acted reasonably when Jeffery began lowering his gun in their direction and therefore did not violate his rights.  Accordingly, the officers were entitled to summary judgment on the basis of qualified immunity.

## V

Summary judgment was also appropriate as to the City of Wichita Falls and the Chief of Police.  In the absence of an underlying constitutional violation, there is no municipal liability for the City or for the Chief of Police sued in his official capacity.[23]  Because the officers did not violate Jeffery's Fourth Amendment rights, the claims of municipal liability must fail also.

\* \* \*

The judgment of the district court is AFFIRMED.

---

[22] *See United States v. Nielson*, 415 F.3d 1195, 1202-04 (10th Cir. 2005).

[23] *Elizondo v. Green*, 671 F.3d 506, 510-11 (5th Cir. 2012) ("[I]n the absence of a constitutional violation, there can be no municipal liability for the City."); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425-26 (5th Cir. 2006) (holding that the Chief of Police was not liable absent an underlying constitutional violation).