# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-11023

United States Court of Appeals
Fifth Circuit

**FILED**
May 21, 2019

Lyle W. Cayce
Clerk

PAUL ANTHONY VALDERAS,

      Plaintiff - Appellant

v.

CITY OF LUBBOCK, a political subdivision; BILLY MITCHELL, individually and his official capacity,

      Defendants - Appellees

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 5:17-CV-245

Before JOLLY, COSTA, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

      Paul Valderas appeals the district court's grant of summary judgment in favor of Officer Billy Mitchell dismissing Valderas's 42 U.S.C. § 1983 excessive force claim.  Valderas contends that there were genuine issues of material fact regarding whether Officer Mitchell was reasonable in using deadly force.  Valderas further contends that the district court abused its discretion by accepting Mitchell's motion to strike a significant portion of Valderas's

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-11023

summary judgment evidence.   We conclude that Valderas has failed to present a genuine issue of material fact regarding his excessive force claim.  We further conclude that the district court did not abuse its discretion in granting Officer Mitchell's motion to strike certain evidence and statements offered by Valderas in summary judgment proceedings.  Consequently, we AFFIRM the judgment of the district court.

## I.

This case arises out of the events surrounding the arrest of Paul Valderas on the night of January 26, 2017, pursuant to a felony arrest warrant issued for Valderas's violation of parole.  It is undisputed that during the arrest, Valderas was shot three times (out of the five successive shots fired) by Officer Billy Mitchell, resulting in Valderas's partial paralysis.[1]

Leading up to this event, a Confidential Informant (CI) working with the Lubbock Police Department allegedly contacted Valderas about purchasing drugs and agreed to meet Valderas at a residence.  Later that night Valderas exited the residence to meet with the occupants of a car that had parked in front of the residence. The CI sat in the passenger seat.[2]  Valderas was talking to the CI through the passenger window of the parked car when he saw a vehicle approaching at a high rate of speed with its bright lights on.

The vehicle in question transported an arrest team including Officer Mitchell, Sergeant Don Billingsley, and Investigator Daniel Merritt.  They were planning to take Valderas into custody pursuant to an outstanding felony warrant for his arrest. The arrest team was notified that Valderas was considered armed and dangerous.  The officers were also briefed that Valderas

---

[1] A security camera from a neighboring residence capturing the encounter was produced as video evidence and is relied upon by both parties on appeal.

[2] In his deposition, Valderas also mentions an unidentified person in the backseat, passenger's side, wearing a hoodie.

No. 18-11023

had recently evaded police in a motor vehicle, and that he had a violent and lengthy criminal history. The plan was to apprehend Valderas as he exited the residence.[3]

Valderas claims that he feared he would be ambushed and robbed, so he took the gun in his hand from his waistband as the car approached. All three officers testified that they saw Valderas pull a gun from his waistband. According to Valderas, as he was pulling his gun from his waistband, the CI told him that it was the police, so he threw the gun into the car.[4] Investigator Merritt yelled, "Gun!" Nearly simultaneously, Officer Mitchell exited the car, drew his weapon, and yelled, "Police!"[5] Officer Mitchell fired five shots at Valderas, striking him three times.

The entire incident, from the time that the police vehicle began approaching until Valderas was shot, did not last more than ten seconds. Officer Mitchell testified that he did not see Valderas discard the weapon before opening fire. The two other officers testified to the same. Investigator Merritt testified, however, that he later found the gun inside the car.

## II.

Valderas filed this civil complaint against Officer Mitchell, officially and individually, and the City of Lubbock, alleging excessive force in violation of 42 U.S.C. § 1983.[6] Officer Mitchell moved for summary judgment on grounds

---

[3] The Lubbock Police Department had been conducting surveillance of Valderas in connection with an ongoing narcotics investigation. A SWAT team was on standby if necessary to assist in the arrest.

[4] Valderas also claims that he put his hands up and started running away. This testimony is flatly contradicted by the video evidence.

[5] All three officers on the arrest team were wearing their department issued tactical vests with "POLICE" in bold, white reflective letters.

[6] The City of Lubbock did not file a brief in this appeal.

of qualified immunity as to the claim against him in his individual capacity, asserting that his use of force was objectively reasonable because he reasonably believed that Valderas possessed a gun and was a threat to everyone present, including the two innocent bystanders in the car next to Valderas.

Also apropos to this appeal, Officer Mitchell filed a motion before the district court, titled "Motion for Leave to File Reply Brief, Objections and Motion to Strike and Exclude Inadmissible Portions of Plaintiff's Summary Judgment Evidence and Unsupported Assertions." In his motion, Officer Mitchell (1) requested leave to file his reply brief; (2) objected to eleven of Valderas's exhibits filed in response to the motion for summary judgment as inadmissible and not competent summary judgment evidence; (3) objected to certain assertions by Valderas as unsupported; and (4) moved to strike based on each of these objections. In response, Valderas opposed the motion, arguing that the motion was not filed in compliance with Northern District of Texas Local Rule 7.1; that is, that Officer Mitchell's counsel allegedly failed to properly conference with Valderas's counsel prior to filing the motion— contrary to the recited certification of conference.

The district court granted Officer Mitchell's motion to strike, noting that Valderas failed to contest the arguments raised in the motion to strike, and it found, without further explanation, that each objection Mitchell raised was meritorious. In the same ruling, the district court concluded that Officer Mitchell was entitled to qualified immunity and granted his motion for summary judgment. Accordingly, the district court entered judgment dismissing the claims against Officer Mitchell.

### III.

Valderas now appeals the district court's grant of summary judgment on the issue of qualified immunity. Valderas argues that the use of deadly force

is confined to the moment of the threat, which he contends ceased when Valderas threw the gun in the car.  Valderas points to the allegedly "inconsistent" descriptions of the location of Valderas's gun in Officer Mitchell's sworn statement on January 29, 2017 and in his December 27, 2017 affidavit as evidence that Officer Mitchell knew that Valderas was no longer armed and that the threat had ceased.  Valderas also emphasizes that Sgt. Billingsley confronted the same facts as Officer Mitchell but did not fire his weapon; and he argues that this restrained conduct establishes that Officer Mitchell acted unreasonably.  Additionally, he says that all three bullets struck him in the back, supporting his contention that he was fleeing when the shots were fired.  Lastly, Valderas challenges the district court's decision to strike certain evidence he submitted in opposition to Officer Mitchell's motion for summary judgment.

## IV.

We first address the standard of review.  We review a grant of summary judgment de novo, applying the same standard as the district court.  *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 244 (5th Cir. 2006)).  "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rogers v. Bromac Title Servs.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  There exists a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "We construe all facts and inferences in the light most favorable to the nonmoving party." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005) (citing *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir. 1997)).  But "[s]ummary judgment may not be thwarted by

conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

"Further, although courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A good-faith qualified immunity defense alters the usual summary judgment burden of proof. Although we view the evidence in the light most favorable to the nonmoving party, the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity. *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (citing *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)).

Discretionary matters, including the district court's application of local rules in disposing of motions, are reviewed under an abuse of discretion standard. *Victor F. v. Pasadena Indep. Sch. Dist.*, 793 F.2d 633, 635 (5th Cir. 1986).

No. 18-11023

V.

We now turn to address the substance of Valderas's claim. When evaluating a claim of qualified immunity "we engage in a two-part inquiry asking: first, whether taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right; and second, whether the right was clearly established." *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (internal quotation marks and citations omitted).[7] To overcome a claim of qualified immunity in an excessive force case, the plaintiff "must show '(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Ontiveros*, 564 F.3d at 382). Excessive force claims are "evaluated for objective reasonableness based on the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). "[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009). Recognizing that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," *Graham v. Connor*, 490 U.S. 386, 397 (1989), the Supreme Court has warned against "second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation," *Ryburn v. Huff*, 565 U.S. 469, 477 (2012). Accordingly, reasonableness "must be judged from the perspective of a

---

[7] We may exercise our discretion in deciding which prong to address first. *See, e.g.*, *Cantrell v. City of Murphy*, 666 F.3d 911, 919 (5th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

"The use of deadly force violates the Fourth Amendment unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) *(*quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)) (internal quotation marks omitted). Stated differently, "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citing *Ontiveros*, 564 F.3d at 382).

Applying the law to the facts of this case, we first note that Valderas admits to pulling a gun from his trousers. He argues, however, that the exercise of deadly force was no longer reasonable once he threw the gun into the vehicle and "turned to flee." Contrary to Valderas's assertions, the video footage does not show that he put his hands up, nor does it show that he was fleeing, when the shots were fired. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Instead, Valderas only can be seen leaning into the car—not discarding the gun.[8]

---

[8] Valderas argues that Officer Mitchell's initial statement that Officer Mitchell saw Valderas's gun on the ground after Officer Mitchell approached the car creates a genuine issue of fact as to whether Officer Mitchell saw or should have seen Valderas discard the gun. We do not see any merit in this argument. First, it is not clear that Officer Mitchell's initial statement was inaccurate, as Investigator Merritt testified that, after the incident, he took the gun from the car and placed it on the ground. Second, the statements are not inherently inconsistent, as Officer Mitchell's second statement simply does not mention the location of the gun after the shooting. Third, to the extent that there is any inconsistency in Officer

No. 18-11023

Given these facts, there is no genuine dispute but that Officer Mitchell's decision to use deadly force was reasonable under these circumstances. Our circuit has repeatedly held that an officer's use of deadly force is reasonable when an officer reasonably believes that a suspect was attempting to use or reach for a weapon. *See, e.g.*, *Manis*, 585 F.3d at 844–45 (collecting cases and finding that the officer's use of deadly force was not excessive when undisputed evidence showed that suspect "in defiance of the officers' contrary orders, reached under the seat of his vehicle and appeared to retrieve an object that [the officer] reasonably believed to be a weapon"). It is immaterial whether a plaintiff was actually armed. *See Romero*, 888 F.3d at 178. Here, it is undisputed that Officer Mitchell saw Valderas intentionally brandish a firearm at the approaching officers. Although Valderas contends that he discarded the gun before he was shot, the events transpired in a matter of seconds, leaving Officer Mitchell with little time to realize that Valderas no longer possessed a gun before making the decision to open fire. Considering the totality of the facts and circumstances, a reasonable officer in Officer Mitchell's position would have reasonably perceived Valderas's actions to pose an imminent threat of serious harm at the time the shots were fired. *See Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 (5th Cir. 2016). It follows that it was not unreasonable for Officer Mitchell to use deadly force to protect himself and others. Officer Mitchell was not required to wait to confirm that Valderas intended to use the gun before shooting. *See Ramirez v. Knoulton*, 542 F.3d 124, 130 (5th Cir. 2008) ("The Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of

---

Mitchell's testimony, it has no bearing on the question of whether Officer Mitchell saw or should have seen Valderas discard the gun.

9

harm exists." (quoting *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996))). Consequently, we find that Officer Mitchell did not violate Valderas's Fourth Amendment rights.[9]

## VI.

Valderas also argues that the district court abused its discretion when it granted Officer Mitchell's motion to strike certain exhibits and statements offered by Valderas in summary judgment proceedings because Officer Mitchell's counsel allegedly failed to comply with Northern District of Texas Local Rule 7.1.[10]

The local rule requires that a party, when filing a motion, certify that the parties conferred on the motion, explain when they conferred, which attorneys conferred, and why they could not reach an agreement.[11]   Before

---

[9] We are also unpersuaded by Valderas's argument that the fact that Sgt. Billingsley did not use deadly force establishes that Officer Mitchell's decision to use such force was unreasonable.  Sgt. Billingsley was driving the vehicle, and he testified that Valderas was already collapsing by the time that he was able to exit.  Officer Mitchell's decision to use deadly force does not become unreasonable simply because Sgt. Billingsley did not also use deadly force, especially given the differing positions of the two officers.  Furthermore, Sgt. Billingsley testified that he too feared for his life and was expecting a gun fight.

[10] Valderas did not present arguments pertaining to the admissibility of the excluded evidence to the district court, nor does he make such arguments on appeal.

[11] The relevant section of Northern District of Texas Local Rule 7.1 reads as follows:

> a. Conference – Before filing a motion, an attorney for the moving party must confer with an attorney for each party affected by the requested relief to determine whether the motion is opposed. Conferences are not required for motions to dismiss, motions for judgment on the pleadings, motions for summary judgment, motions for new trial, or when a conference is not possible.
>
> b. Certificate of Conference.
>
>> 1. Each motion for which a conference is required must include a certificate of conference indicating that the motion is unopposed or opposed.

filing the motion to strike at issue here, Officer Mitchell's counsel emailed Valderas's counsel, explained the motion, and asked Valderas's counsel if Valderas opposed the motion. Valderas's counsel expressed confusion about certain aspects of the motion, insisted that a telephone conference was required under the local rules, and stated that he could not "advise [his] client and gain approval to oppose or not oppose your motion" without such a telephone conference. Officer Mitchell's counsel replied with additional details about the motion and explained that she did not believe that a telephone conference was necessary. Valderas's counsel responded by again insisting that a telephone conference was "more appropriate."

Officer Mitchell's counsel did not respond. Instead, Officer Mitchell filed the motion with the district court. The motion contained a certificate noting the email exchange and explaining that Officer Mitchell was unsure if Valderas opposed the motion. Valderas subsequently opposed the motion solely by arguing that it violated the local rule. The district court granted the motion after summarily noting that it was "meritorious."

Valderas cites to only one decision explicating the meaning of the local rule in question and implies that the decision establishes that a telephone conversation is necessary to satisfy the conference requirement. The decision explicitly notes, however, that the conference requirement can be met through a written conferral. *See Dondi Props. Corp. v. Commerce Sav. & Loan Ass'n*,

---

2. If a motion is opposed, the certificate must state that a conference was held, indicate the date of conference and the identities of the attorneys conferring, and explain why agreement could not be reached.

3. If a conference was not held, the certificate must explain why it was not possible to confer, in which event the motion will be presumed to be opposed.

121 F.R.D. 284, 290 (N.D. Tex. 1988) (en banc) (per curiam). Valderas has provided no authority to suggest that Officer Mitchell's counsel did anything improper by declining to confer over the telephone. To the point, we see no basis for finding that the district court abused its discretion by accepting Officer Mitchell's motion to strike.[12]

## VII.

Accordingly, we hold that Officer Mitchell did not violate Valderas's Fourth Amendment rights when he used deadly force against Valderas. We further hold that the district court did not abuse its discretion by granting Officer Mitchell's motion to strike. The judgment of the district court is thus

AFFIRMED.

---

[12] Even if we considered the evidence that the district court excluded, however, our qualified immunity determination would remain the same.